IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSEPH MITCHELL,

        Plaintiff,　　　　　No. CIV S-05-1491 RRB GGH P

  vs.

MARGARITA A. PEREZ, et al.,　　　　　ORDER &

        Defendants.　　　　　FINDINGS AND RECOMMENDATIONS

_____

Introduction

        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983.[1]  Pending before the court is 1) defendants' December 27, 2006, motion to dismiss, to which plaintiff filed an opposition on January 10, 2007; 2) plaintiff's December 1, 2006, request for reconsideration of this court's denial of an earlier request by plaintiff for appointment of counsel, directed to the undersigned, and construed as a renewed request for appointment of counsel.

\\\\\

\\\\\

---

[1] Initially, plaintiff purported to file a petition pursuant to 28 U.S.C. §2254, which was dismissed with leave to file a civil rights action.  See Order, filed on February 16, 2006.

Allegations

In his amended complaint, filed on March 3, 2006 (construed as an amended complaint in light of his earlier "petition"[2]), the gravamen of his allegations is that defendants Margarita Perez, (former) Chairperson of the California Board of Prison Terms (now Board of Parole Hearings, hereafter, Board), and (former) California Department of Corrections and Rehabilitation (CDCR) Director, Jeanne Woodford, in violation of an international treaty and federal statutes, as well as plaintiff's constitutional right to equal protection and due process, have kept plaintiff, an illegal alien, by way of unconstitutional state statutes and regulations,[3] in California's prison system for 20 years as part of "an alien slave labor work force throughout the 35 separate prisons," despite plaintiff's request to be transferred back to the Canadian prison system, and despite having permitted the transfer to Sweden of a Swedish illegal alien inmate, Mikael Schiold,[4] also convicted of second degree murder.  Amended Complaint (AC), pp. 1-7, 9, 11, Exhibit (Exh.) A.  Plaintiff maintains that he is denied proximity to family other prisoners (and the transferred Swede) are allowed and is limited to vocational training that inmates who are U.S. citizens can use in this country, while he is an illegal alien with an INS (now BICE)[5] hold, who will be immediately deported to the Canadian prison system and unable to use the work

[2] The complaint was construed as an amended complaint in light of the earlier, dismissed "petition," filed on July 25, 2005.  See Order, filed on June 26, 2006, p. 1.

[3] He challenges as "unconstitutionally vague" (AC, pp. 8, 11-14)  Cal. Penal Code § 2931, which codifies the application of good time credit to the sentences of state prisoners, and CAL. CODE REGS. tit.xv, § 3040(a), which requires, inter alia, "[e]very able-bodied person committed" to CDCR custody "to work as assigned by department staff ....", which "[a]ssignment may be to a full day of work, education, or other program activity or to a combination...."

[4] The court notes that in the settlement agreement plaintiff has attached with regard to this individual who was transferred into Swedish custody, that first Mikael Schiold was found suitable for parole by the Board of Prison Terms, which decision was reversed by former Gov. Davis, and the state superior court then granted petitioner Schiold's petition, challenging the governor's reversal.  Plaintiff makes no representation that the Board has ever recommended his own parole.

[5] Bureau of Immigration and Customs Enforcement.

2

1  training provided in California prisons.  Id., at 5, 8-9.  Plaintiff seeks money damages,

2  declaratory and injunctive relief.[6]

3  Motion to Dismiss

4          Defendants move for dismissal pursuant to nonenumerated Fed. R. Civ. P. 12(b),

5  on the ground that plaintiff has failed to exhaust his administrative remedies as to defendant

6  Woodford, and pursuant to  Rule 12(b)(6), as to both defendants Perez and Woodford, on the

7  ground that plaintiff has failed to state claims upon which relief can be granted.  Motion to

8  Dismiss (MTD), p. 1.

9          *Legal Standard under Non-Enumerated Fed.R.Civ.P. 12(b)*

10          In a motion to dismiss for failure to exhaust administrative remedies under non-

11  enumerated Rule 12(b) of the Federal Rules of Civil Procedure, defendants "have the burden of

12  raising and proving exhaustion."  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  The

13  parties may go outside the pleadings, submitting affidavits or declarations under penalty of

14  perjury, but plaintiff must be provided with notice of his opportunity to develop a record.  Wyatt

15  v. Terhune, 315 F.3d at 1120 n.14.  The court provided plaintiff with such fair notice by Order,

16  filed on July 31, 2006.

17          Should defendants submit declarations and/or other documentation demonstrating

18  an absence of exhaustion, making a prima facie showing, plaintiff must refute that showing.

19  Plaintiff may rely upon statements made under the penalty of perjury in the complaint if the

20  complaint shows that plaintiff has personal knowledge of the matters stated and plaintiff calls to

21  the court's attention those parts of the complaint upon which plaintiff relies.  If the court

22  determines that plaintiff has failed to exhaust, dismissal without prejudice is the appropriate

23  remedy for non-exhaustion of administrative remedies.  Wyatt v. Terhune, 315 F.3d at 1120.

24  _____

25          [6] To the extent that plaintiff seeks prospective injunctive relief, the current Board
   Chairperson and CDCR Secretary would be the appropriate official capacity defendants, pursuant
26  to Fed. R. Civ. P. 25(d).

1    _PLRA Requirements_

2    The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) provides that,

3    "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any

4    other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

5    such administrative remedies as are available are exhausted."  Inmates seeking injunctive relief

6    must exhaust administrative remedies.  Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999).  In Booth

7    v. Churner, 532 U.S. 731,741, 121 S. Ct. 1819, 1825 (2001), the Supreme Court held that

8    inmates must exhaust administrative remedies, regardless of the relief offered through

9    administrative procedures.  Therefore, inmates seeking money damages must also completely

10   exhaust their administrative remedies.  Booth v. Churner, 532 U.S. 731, 121 S. Ct. 1819 (inmates

11   seeking money damages are required to exhaust administrative remedies even where the

12   grievance process does not permit awards of money damages).  42 U.S.C. § 1997e(a) provides

13   that no action shall be brought with respect to prison conditions _until_ such administrative

14   remedies as are available are exhausted.  McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002).

15   _Administrative Exhaustion Procedure_

16   In order for California prisoners to exhaust administrative remedies, they must

17   proceed through several levels of appeal:  1) informal resolution, 2) formal written appeal on a

18   CDC 602 inmate appeal form, 3) second level appeal to the institution head or designee, and 4)

19   third level appeal to the Director of the California Department of Corrections.  Barry v. Ratelle,

20   985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. 15, § 3084.5).  A final

21   decision from the Director's level of review satisfies the exhaustion requirement.  Id. at 1237-38.

22   _Discussion_

23   Because defendants concede that the administrative grievance procedure within

24   the Board has been eliminated, defendants do not raise this claim as to defendant Perez.  MTD, p.

25   8.  However, as to defendant Woodford, in her capacity (or former capacity) as CDCR Director,

26   as defendants maintain, the CDCR grievance process is on-going and plaintiff must have

4

1  exhausted any claims against her through that process prior to filing his lawsuit.  Id.  Defendants

2  contend that there is no record of any CDC 602 appeal having been filed by plaintiff against

3  defendant Woodford, much less any that was exhausted at the Director's level.  Id.

4          P. Dennis, the current CDCR appeals coordinator located at Correctional Training

5  Facility (CTF) in Soledad, where plaintiff is housed, declares explicitly, under penalty of perjury,

6  that there is no appeal on record of plaintiff having filed a CDC 602 alleging that defendant

7  Woodford maintained an illegal alien work force or enforced unconstitutionally vague statutes

8  which purportedly forced illegal aliens to work (the gravamen of his claims as to this defendant).

9  MTD, P. Dennis Declaration (Dec.), ¶¶ 1, 6.  S. Pedevilla, CDCR office tech and assistant to the

10  litigation coordinator at CTF, and an authorized custodian of records likewise declares that there

11  is no record of plaintiff having filed a CDC 602 appeal regarding his claims against defendant

12  Woodford.  MTD, Exh. B, S. Pedevilla Dec.,¶¶ 1, 2.  Finally, CDCR Chief of the Inmate Appeals

13  Branch in Sacramento, N. Grannis, declares that her review of the Inmate Appeals Branch

14  records and database reveals that there is no record of plaintiff having brought a CDC 602 appeal

15  to the third level alleging that defendant Woodford maintained an illegal alien work force or

16  enforced unconstitutionally vague statutes which purportedly forced illegal aliens to work.

17  MTD,  Exh. C, N. Grannis Dec., ¶¶ 1, 9.

18          In opposition, plaintiff maintains that he has filed, and defendants counsel is

19  aware that he filed, two CDC 830 transfer appeal applications directly to the Board Chairperson,

20  defendant Perez, that the first transfer appeal was denied and that plaintiff presented all of his

21  claims in that appeal.  Opposition (Opp.), p. 2.  As to the second transfer appeal, plaintiff

22  maintains that defendant Perez failed to comply with the time limits of Cal. Code Regs. tit. 15, §

23  3084.6 (4)[7] and (6).[8]  Id.  Plaintiff contends that the CDC 830 transfer application is designed for

24

25          [7] "Third level responses shall be completed within 60 working days."

26          [8] "Except for the third formal level, if an exceptional delay prevents completion of the
review within specified time limits, the appellant shall be informed in writing of the reasons for

1   illegal aliens seeking transfer to their native countries, and is equivalent to the CDC 602 process,

2   and that he has exhausted his administrative remedies by filing two such grievances, one of

3   which was denied and the other for which he was never provided a response at all.  Id., at 2, 4-5,

4   14 Exh. A.  Plaintiff states that the Board has eliminated all inmate appeals, which defendants

5   have conceded.  Defendants, however, do not allege nonexhaustion as to defendant Perez.

6          Plaintiff also contends that there are no remedies available within CDCR to

7   challenge plaintiff's claims (as to defendant Woodford, presumably), regarding his illegal alien

8   slave labor work force claims.  Opp., p. 12.  However, plaintiff is not the arbiter of what genus of

9   claims may be made via the CDCR inmate appeal system.  As noted, the exhaustion requirement

10  is mandatory, "regardless of the relief offered through administrative procedures."  42 U.S.C. §

11  1997e(a); Booth v. Churner, supra, 532 U.S. at 741,121 S. Ct. at 1825.  Plaintiff makes no

12  showing whatever of having ever filed a 602 inmate appeal with respect to his claims herein

13  against defendant Woodford, any showing he does make goes to his efforts in appeals with

14  regard to defendant Perez, who is not at issue within this ground of defendants' motion.

15         This court will recommend dismissal of plaintiff's claims against defendant

16  Woodford for his failure to exhaust administrative remedies as to these claims.   Dismissal of

17  defendant Woodford from this action without further leave to amend is appropriate because 42

18  U.S.C. § 1997e(a) provides that no action shall be brought with respect to prison conditions *until*

19  such administrative remedies as are available are exhausted, McKinney v. Carey, supra, 311 F.3d

20  1198, and plaintiff has failed to make any showing of exhaustion whatever as to his claims with

21  regard to this defendant.

22         Because the court finds that defendant Woodford should be dismissed from this

23  action for plaintiff's failure to exhaust administrative remedies, the undersigned will address

24  defendants' Rule 12(b)(6) motion only with respect to the remaining defendant, defendant Perez.

25  _____

26  the delay and the estimated completion date."

1          *Legal Standard for Motion to Dismiss*

2          A complaint should not be dismissed under Rule 12(b)(6) unless it appears

3   beyond doubt that plaintiff cannot prove any set of facts consistent with his allegations which

4   would entitle him to relief.  NOW, Inc. v. Schiedler, 510 U.S. 249, 256, 114 S. Ct. 798, 803

5   (1994); Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984), citing Conley

6   v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957),  Cervantes v. City of San Diego, 5 F.3d

7   1273, 1274-75 (9th Cir. 1993).  Dismissal of the complaint, or any claim within it, "can be based

8   on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

9   cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990);

10  see also Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

11          In considering a motion to dismiss, the court must accept as true the allegations of

12  the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S.

13  Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the

14  motion and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421,

15  89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869 (1969).  The court will "'presume that general

16  allegations embrace those specific facts that are necessary to support the claim.'"  NOW, 510

17  U.S. at 256; 114 S. Ct. at 803, quoting Lujan v. Defenders of Wildlife, 504 U.S.555, 561, 112 S.

18  Ct. 2130, 2137 (1992).  Moreover, pro se pleadings are held to a less stringent standard than

19  those drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).  A

20  motion to dismiss for failure to state a claim should not be granted unless it appears beyond

21  doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to

22  relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984), citing

23  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957); see also Palmer v. Roosevelt

24  Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).

25          The court may consider facts established by exhibits attached to the complaint.

26  Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may disregard

1   allegations in the complaint if they are contradicted by facts established by exhibits attached to

2   the complaint.  Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

3   Furthermore, the court is not required to accept as true allegations that contradict facts which

4   may be judicially noticed.  Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir.

5   1987), cert. denied, 486 U.S. 1040 (1988).  The court need not accept as true conclusory

6   allegations, unreasonable inferences, or unwarranted deductions of fact.  Western Mining

7   Council v. Watt, 643 F.2d 618, 624 (9th Cir.), cert. denied, 454 U.S. 1031 (1981).  The court

8   need not accept legal conclusions "cast in the form of factual allegations."  Western Mining

9   Council v. Watt, 643 F.2d 618, 624 (9th Cir.), cert. denied, 454 U.S. 1031 (1981).

10         A pro se litigant is entitled to notice of the deficiencies in the complaint and an

11   opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.  See

12   Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987).

13       *Discussion*

14         Defendants move for dismissal of plaintiff's claim against defendant Perez, the

15   gravamen of which is that she is denying him equal protection of the laws by not permitting his

16   transfer to Canada, on the ground that plaintiff has not stated an equal protection claim because

17   plaintiff has no constitutional right to determine the place of his incarceration, citing Meacham v.

18   Fano, 427 U.S. 215, 224, 96 S. Ct. 2532 (1976); the Ninth Circuit has held that a Canadian

19   citizen is not entitled to transfer to serve his sentence in his native country under the U.S.-

20   Canada Treaty,[9] Hogan v. Koenig, 920 F.2d 6, 7-8 (9th Cir. 1990); and a prisoner is not entitled

21   to a transfer because decisions regarding any transfer rest within the unfettered discretion of the

22   Executive Branch, Bagguley v. Bush, 953 F.2d 660, 662 (D.C. Cir. 1991).  MTD, pp. 2-3.

23   Further, as to plaintiff's claims of equal protection violations, plaintiff's claim fails, according to

24   defendants, because prisoners from different countries are not similarly situated for transfer

25

26       [9] Treaty Between the United States and Canada on the Execution of Penal Sentences, July 19, 1978, 30 U.S.T. 6263-6272.

1   purposes, thus plaintiff is unable to show "that the defendants acted with an intent or purpose to

2   discriminate against the plaintiff based upon membership in a protected class," quoting Thornton

3   v. City of St. Helens, 425 F.3d 1158, 1166-67 (9th Cir. 2005).   While prisoners incarcerated in

4   the U.S. who are Canadians are governed by the U.S.-Canada Treaty, defendants contend, the

5   transfers of European prisoners housed in the U.S. are governed by the Council of Europe:

6   Convention on the Transfer of Sentenced Persons., 35 U.S.T. 2867, also citing plaintiff's

7   complaint, Exh. C, Schiold Settlement Agreement, ¶ 12.  MTD, pp. 3-4.  Conceding that Canada

8   is a signatory to the Convention, defendants maintain that nevertheless the U.S.-Canada Treaty

9   controls prisoner transfers between the U.S. and Canada because the Convention so provides.[10]

10  MTD, p. 4.[11]  Another factor rendering plaintiff not similarly situated to Schiold, defendants aver,

11  is that Sweden's law with regard to second degree murder differs from that of Canada's

12  (although defendants do not characterize the differences), and one of the factors used to

13  determine whether to approve a foreign transfer request is, citing CAL. CODE REGS. tit.xv, §

14  2870(b)(6), "the relevant law within the receiving nation for the criminal offense committed by

15  the prisoner, including sentencing guidelines."  MTD., p. 4.  Finally, defendants contend that

16  plaintiff is not similarly situated as American inmates due to his status as an illegal alien and the

17  differences between American and Canadian law.  Id.

18          Thus, according to defendants, plaintiff fails to demonstrate different treatment for

19  those similarly situated as he is not similarly situated to a Swedish inmate or inmates who are

20  American citizens.  Id.

21  \\\\\

22

23      [10] "If two or more Parties have already concluded an agreement or treaty on the transfer of

24  sentenced persons or otherwise have established their relations in this matter, or should they in
    the future do so, they shall be entitled to apply that agreement or treaty to regulate those relations
    accordingly in lieu of the present Convention."  Convention, supra, art. 22, p. 2.

25

26      [11] In addition, although defendants do not mention it, the U.S. is not a signatory to the
    Convention.

1    In opposition but not in his complaint, plaintiff primarily raises, or at the least

2    emphasizes, the specter of racial discrimination, arguing that his transfer is not being

3    implemented because he is a French Canadian of African descent, while Schiold is an "Aryan"

4    Swede.[12]  Opp., at 5-10.  Plaintiff alleges that inmate Schiold is "a special transfer due only to his

5    [A]ryan bloodline...." and that plaintiff is being discriminated against because his family

6    members are descendants of African Americans who were part of the underground railroad.[13] (Id.

7    at 5-6).

8    In Meachum, supra, at 225, 96 S. Ct. at 2538, the U.S. Supreme Court does state

9    that a prisoner does not have a due process right against a transfer:"[t]hat life in one prison is

10   much more disagreeable than in another does not in itself signify that a Fourteenth Amendment

11   liberty interest is implicated when a prisoner is transferred to the institution with the more severe

12   rules."  Generally, prison officials' housing and classification decisions do not give rise to federal

13   constitutional claims encompassed by the protection of liberty and property guaranteed by the

14   Fifth and Fourteenth Amendments.  See Board of Regents v. Roth, 408 U.S. 564, 569, 92 S. Ct.

15   2701 (1972); see also, Rizzo v. Dawson, 778 F.2d 527, 530 (9th Cir.1985) (prison authorities

16   may change a prisoner's "place of confinement even though the degree of confinement may be

17   different and prison life may be more disagreeable in one institution than in another" without

18   violating the prisoner's due process rights); Hanrahan v. Lane, 747 F.2d 1137, 1140-41 (7th

19   Cir.1984) (allegation that prison guard planted false evidence in retaliation for prisoner's failure

20   to pay extortion demand fails to state section 1983 claim so long as procedural due process was

21   provided).  While in Meachum, the U. S. Supreme Court is explicitly addressing transfers of

22

23   [12]  Neither in plaintiff's 60-page complaint, nor in his supporting exhibits, does plaintiff appear to suggest the denial of his requests for transfer arise largely as a result of racial

24   discrimination.

25   [13]  Presumably plaintiff is referring to individuals engaged in helping people escape slavery in this country around the time of the American Civil War, a heritage of which plaintiff

26   might justly be proud but one which would seem to be extremely remote as serving any basis for racial bigotry directed at him at the beginning of the 21st century.

1   inmates within the state prison system, the high court has made clear that the reasoning of, inter

2   alia, <u>Meachum</u>, applies beyond the intrastate context and "compels the conclusion that an

3   interstate prison transfer...does not deprive an inmate of any liberty interest protected under the

4   Due Process Clause in and of itself."  <u>Olim v. Wakinekona</u>, 461 U.S. 238, 248, 103 S. Ct. 1741,

5   1747 (1983).  <u>Montayne v. Haymes</u>, 427 U.S. 236, 242 & n. 4, 96 S. Ct. 2543 (1976) (even

6   "substantially burdensome consequences," such as separation from home and family due to a

7   prison transfer, does not implicate due process).

8          Regardless of his Canadian citizenship, plaintiff is an individual duly convicted in

9   a state of California superior court of a violation of the state's penal code and a prisoner of that

10  state, subject to the regulations and statutes applicable thereto.   As the Ninth Circuit has

11  observed, California is not a party to the U.S. - Canada Treaty, whose parties are the United

12  States and Canada, and is therefore not bound by the Treaty.  <u>Hogan v. Koenig</u>, <u>supra</u>, 920 F.2d

13  at 8:

14          California has decided to cause Hogan to serve his sentence where
            he committed his crime, and not in his native land. California has
15          the power to make such a decision, and the Treaty expresses no
            limitations on the basis on which California may make that
16          decision.

17  <u>Id</u>.

18          Further, the District of Columbia Circuit has found that an alien prisoner has no

19  protected liberty interest in a transfer to his home country, even in the case of an applicable

20  ratified treaty providing for transfer of alien prisoners to their home countries, e.g., the treaty

21  between the U.S. and the United Kingdom,[14] as well as a statute[15] authorizing the chief law

22  enforcement officer of the executive branch (in the person of the Attorney General) to implement

23  the treaty.  <u>Bagguley v. Bush</u>, 953 F.2d 660 (D.C. Cir. 1991) (absent "substantive limitations on

24  ────────────────

25          [14] <u>Convention of the Transfer of Sentenced Persons</u>, 22 I.L.M. 530 (1983).

26          [15] <u>The Transfer of Offenders to and from Foreign Countries Act</u>, 18 U.S.C. § 4100, et seq.
        (1988).

1   official discretion" set forth, prison administrators have "completely unfettered discretion"

2   regarding prison transfers; moreover, the Attorney General is given "unfettered discretion" by the

3   Act and Treaty "with respect to transfer decisions").

4              The Fourteenth Amendment's Equal Protection Clause "directs that 'all persons

5   similarly circumstanced shall be treated alike.'" Plyler v. Doe, 457 U.S. 202, 216, 102 S. Ct.

6   2382, 2394 (1982) (internal citations omitted).  On the other hand, "'[t]he Constitution does not

7   require things which are different in fact or opinion to be treated in law as though they were the

8   same.'"  Id.  In raising in his opposition an argument that he is being discriminated against on the

9   basis of race, plaintiff apparently seeks to invoke the protections afforded to a suspect class,

10   requiring higher scrutiny of government action, with respect to his allegations concerning the

11   refusal of defendant Perez and the Board to transfer him to Canada.  Johnson v. California, 543

12   U.S. 499, 505, 125 S. Ct. 1141 (2005), quoting Adarand Constructors, Inc. v. Peña, 515 U.S.

13   200, 207, 115 S. Ct. 2097 (1995) ("[w]e have held 'all racial classifications [imposed by

14   government]...must be analyzed by a reviewing court under strict scrutiny.") [Emphasis in

15   Johnson, supra.]   However, in the first place, while both plaintiff and Schiold were illegal

16   immigrants convicted in California of second degree murder, taking plaintiff's allegations as true

17   as the court must on this motion to dismiss, plaintiff nevertheless does not meet the threshold

18   requirement of showing himself to be similarly situated to Schiold.  Inmate Schiold was a citizen

19   of another country, apparently in a different posture with respect to his parole consideration, and

20   whose transfer was effected with respect to a different treaty than the one arguably applicable to

21   plaintiff's incarceration.  Moreover, even assuming plaintiff does meet the threshold of being

22   similarly situated, the U.S. Supreme Court has long refused to recognize illegal aliens as a

23   suspect class.  Plyler, supra, at 219, n. 19, 102 S. Ct. at 2396, n. 19 ("Unlike most of the

24   classifications that we have recognized as suspect, entry into this class [illegal aliens], by virtue

25   of entry into this country, is the product of voluntary action.  Indeed, entry into the class is itself a

26   crime.")

1    While a complaint subjected to a Rule 12(b)(6) motion to dismiss does not require

2  detailed factual allegations, a plaintiff is obligated to provide a basis for his entitlement to relief

3  beyond "labels and conclusions....[f]actual allegations must be enough to raise a right to relief

4  above the speculative level...."  Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1964-65 (May 21,

5  2007).  Plaintiff must make more than a desperate stab at alleging racial discrimination in his

6  opposition to a motion to dismiss (but not even in his complaint) in order to qualify to continue

7  in litigation.  Simply picking a person of a different race, in a different situation, in a different

8  legal regime, and as far as the opposition demonstrates, subject to a transfer decision made by

9  different decisionmakers, who qualified for something similar to what plaintiff desires, falls far

10  short of moving an assumed racial discrimination claim past the barest of outright speculations.

11  The court finds that defendants' motion to dismiss should be granted as to defendant Perez,

12  plaintiff having failed to allege a cognizable claim of a violation of his constitutional rights by

13  the alleged actions of this defendant in not permitting plaintiff's transfer to Canada.

14    "Under Ninth Circuit case law, district courts are only required to grant leave to

15  amend if a complaint can possibly be saved.  Courts are not required to grant leave to amend if a

16  complaint lacks merit entirely."  Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).  See also,

17  Smith v. Pacific Properties and Development Corp., 358 F.3d 1097, 1106 (9th Cir. 2004), citing

18  Doe v. United States, 58 F.3d 494, 497(9th Cir.1995) ("a district court should grant leave to

19  amend even if no request to amend the pleading was made, unless it determines that the pleading

20  could not be cured by the allegation of other facts.")

21    Although the court has much doubt that plaintiff can state a claim of racial

22  discrimination against defendant Perez, plaintiff will be given one opportunity to state *facts* from

23  which a reasonable inference of discrimination could be made.

24  "Reconsideration of Motion for Appointment of Counsel"

25    By Order, filed on July 31, 2006, this court denied plaintiff's request for

26  appointment of counsel.  Plaintiff directs a request for reconsideration of that order to the

13

1   undersigned, renewing his request for appointment of counsel.  As plaintiff was previously

2   informed, the United States Supreme Court has ruled that district courts lack authority to require

3   counsel to represent indigent prisoners in § 1983 cases.  Mallard v. United States Dist. Court,

4   490 U.S. 296, 298 (1989).  In certain exceptional circumstances, the court may request the

5   voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1).  Terrell v. Brewer, 935 F.2d

6   1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).  In

7   the present case, the court does not find the required exceptional circumstances, particularly in

8   light of the court's present recommendation that this matter be dismissed.  Plaintiff's renewed

9   request for the appointment of counsel will therefore be denied.

10           Accordingly, IT IS HEREBY ORDERED that:

11           1.  Defendants' December 27, 2006, motion to dismiss for failure to state a claim

12   upon which relief can be granted, as to defendant Perez, pursuant to Fed. R. Civ. P. 12(b)(6), is

13   granted with leave to amend, within thirty days, to set forth factual allegations that support a

14   claim of racial discrimination; failure to do so will result in a recommendation of dismissal of

15   this action; and

16           2.  Plaintiff's request for reconsideration directed to the undersigned, construed as

17   a renewed request for appointment of counsel, filed on December 1, 2006, is denied.

18           IT IS RECOMMENDED that defendants' December 27, 2006, motion to dismiss,

19   be granted as to defendant Woodford, under nonenumerated Fed. R. Civ. 12(b), for plaintiff's

20   failure to exhaust administrative remedies, and this defendant be dismissed from this action.

21           These findings and recommendations are submitted to the United States District

22   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

23   days after being served with these findings and recommendations, any party may file written

24   objections with the court and serve a copy on all parties.  Such a document should be captioned

25   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

26   shall be served and filed within ten days after service of the objections.  The parties are advised

14

1  that failure to file objections within the specified time may waive the right to appeal the District

2  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3  DATED: 7/31/07

4  /s/ Gregory G. Hollows

5  GREGORY G. HOLLOWS
   UNITED STATES MAGISTRATE JUDGE

   GGH:009
6  mitc1491.mtd

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26