1

2

3

4

5

6

7

8                   IN THE UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOSEPH MITCHELL,

11             Plaintiff,                 No. CIV S-05-1491 JAM GGH P

12        vs.

13   MARGARITA A. PEREZ, et al.,

14             Defendants.                    FINDINGS AND RECOMMENDATIONS

15   _____

16             By Order, filed on 7/31/07, this court granted defendant Perez's motion to dismiss

17   with leave to amend within thirty days as to defendant Perez "to set forth allegations that support

18   a claim of racial discrimination...."  By Findings and Recommendations, also filed on 7/31/07,

19   the undersigned recommended granting defendant Woodford's motion to dismiss from this

20   action for failure to exhaust administrative remedies, which findings and recommendations were

21   adopted by Order, filed on 8/27/08.

22             In response to the 7/31/07, Order, plaintiff filed a second amended complaint, on

23   8/20/07.  Within the second amended complaint, plaintiff wholly failed to cure the defects of first

24   amended complaint.  In the Order, the undersigned stated, in relevant part, as follows:

25             Defendants move for dismissal of plaintiff's claim against
              defendant Perez, the gravamen of which is that she is denying him
26             equal protection of the laws by not permitting his transfer to

1

Canada, on the ground that plaintiff has not stated an equal protection claim because plaintiff has no constitutional right to determine the place of his incarceration, citing <u>Meacham v. Fano</u>, 427 U.S. 215, 224, 96 S. Ct. 2532 (1976); the Ninth Circuit has held that a Canadian citizen is not entitled to transfer to serve his sentence in his native country under the U.S.- Canada Treaty,[1] <u>Hogan v. Koenig</u>, 920 F.2d 6, 7-8 (9th Cir. 1990); and a prisoner is not entitled to a transfer because decisions regarding any transfer rest within the unfettered discretion of the Executive Branch, <u>Bagguley v. Bush</u>, 953 F.2d 660, 662 (D.C. Cir. 1991).  MTD, pp. 2-3.  Further, as to plaintiff's claims of equal protection violations, plaintiff's claim fails, according to defendants, because prisoners from different countries are not similarly situated for transfer purposes, thus plaintiff is unable to show "that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class," quoting <u>Thornton v. City of St. Helens</u>, 425 F.3d 1158, 1166-67 (9th Cir.  2005).   While prisoners incarcerated in the U.S. who are Canadians are governed by the U.S.-Canada Treaty, defendants contend, the transfers of European prisoners housed in the U.S. are governed by the <u>Council of Europe: Convention on the Transfer of Sentenced Persons.</u>, 35 U.S.T. 2867, also citing plaintiff's complaint, Exh. C, Schiold Settlement Agreement, ¶ 12.  MTD, pp. 3-4.  Conceding that Canada is a signatory to the Convention, defendants maintain that nevertheless the U.S.-Canada Treaty controls prisoner transfers between the U.S. and Canada because the Convention so provides.[2] MTD, p. 4.[3]  Another factor rendering plaintiff not similarly situated to Schiold, defendants aver, is that Sweden's law with regard to second degree murder differs from that of Canada's (although defendants do not characterize the differences), and one of the factors used to determine whether to approve a foreign transfer request is, citing Cal. Code Regs. tit.xv, § 2870(b)(6), "the relevant law within the receiving nation for the criminal offense committed by the prisoner, including sentencing guidelines." MTD., p. 4.  Finally, defendants contend that plaintiff is not similarly situated as American inmates due to his status as an illegal alien and the differences between American and Canadian law.  Id.

---

[1] <u>Treaty Between the United States and Canada on the Execution of Penal Sentences, July 19, 1978,</u> 30 U.S.T. 6263-6272.

[2] "If two or more Parties have already concluded an agreement or treaty on the transfer of sentenced persons or otherwise have established their relations in this matter, or should they in the future do so, they shall be entitled to apply that agreement or treaty to regulate those relations accordingly in lieu of the present Convention."  <u>Convention</u>, supra, art. 22, p. 2.

[3] In addition, although defendants do not mention it, the U.S. is <u>not</u> a signatory to the Convention.

Thus, according to defendants, plaintiff fails to demonstrate different treatment for those similarly situated as he is not similarly situated to a Swedish inmate or inmates who are American citizens.  Id.

In opposition but not in his complaint, plaintiff primarily raises, or at the least emphasizes, the specter of racial discrimination, arguing that his transfer is not being implemented because he is a French Canadian of African descent, while Schiold is an "Aryan" Swede.[4]  Opp., at 5-10.  Plaintiff alleges that inmate Schiold is "a special transfer due only to his [A]ryan bloodline...." and that plaintiff is being discriminated against because his family members are descendants of African Americans who were part of the underground railroad.[5] (Id. at 5-6).

In Meachum, supra, at 225, 96 S. Ct. at 2538, the U.S. Supreme Court does state that a prisoner does not have a due process right against a transfer:"[t]hat life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules."  Generally, prison officials' housing and classification decisions do not give rise to federal constitutional claims encompassed by the protection of liberty and property guaranteed by the Fifth and Fourteenth Amendments.  See Board of Regents v. Roth, 408 U.S. 564, 569, 92 S. Ct. 2701 (1972); see also, Rizzo v. Dawson, 778 F.2d 527, 530 (9th Cir.1985) (prison authorities may change a prisoner's "place of confinement even though the degree of confinement may be different and prison life may be more disagreeable in one institution than in another" without violating the prisoner's due process rights); Hanrahan v. Lane, 747 F.2d 1137, 1140-41 (7th Cir.1984) (allegation that prison guard planted false evidence in retaliation for prisoner's failure to pay extortion demand fails to state section 1983 claim so long as procedural due process was provided).  While in Meachum, the U. S. Supreme Court is explicitly addressing transfers of inmates within the state prison system, the high court has made clear that the reasoning of, inter alia, Meachum, applies beyond the intrastate context and "compels the conclusion that an interstate prison transfer...does not deprive an inmate of any liberty interest protected under the Due Process Clause in and of itself."  Olim v. Wakinekona, 461 U.S.

---

[4]  Neither in plaintiff's 60-page complaint, nor in his supporting exhibits, does plaintiff appear to suggest the denial of his requests for transfer arise largely as a result of racial discrimination.

[5]  Presumably plaintiff is referring to individuals engaged in helping people escape slavery in this country around the time of the American Civil War, a heritage of which plaintiff might justly be proud but one which would seem to be extremely remote as serving any basis for racial bigotry directed at him at the beginning of the 21st century.

238, 248, 103 S. Ct. 1741, 1747 (1983). Montayne v. Haymes, 427 U.S. 236, 242 & n. 4, 96 S. Ct. 2543 (1976) (even "substantially burdensome consequences," such as separation from home and family due to a prison transfer, does not implicate due process).

Regardless of his Canadian citizenship, plaintiff is an individual duly convicted in a state of California superior court of a violation of the state's penal code and a prisoner of that state, subject to the regulations and statutes applicable thereto.  As the Ninth Circuit has observed, California is not a party to the U.S. - Canada Treaty, whose parties are the United States and Canada, and is therefore not bound by the Treaty.  Hogan v. Koenig, supra, 920 F.2d at 8:

> California has decided to cause Hogan to serve his sentence where he committed his crime, and not in his native land. California has the power to make such a decision, and the Treaty expresses no limitations on the basis on which California may make that decision.

Id.

Further, the District of Columbia Circuit has found that an alien prisoner has no protected liberty interest in a transfer to his home country, even in the case of an applicable ratified treaty providing for transfer of alien prisoners to their home countries, e.g., the treaty between the U.S. and the United Kingdom,[6] as well as a statute[7] authorizing the chief law enforcement officer of the executive branch (in the person of the Attorney General) to implement the treaty.  Bagguley v. Bush, 953 F.2d 660 (D.C. Cir. 1991) (absent "substantive limitations on official discretion" set forth, prison administrators have "completely unfettered discretion" regarding prison transfers; moreover, the Attorney General is given "unfettered discretion" by the Act and Treaty "with respect to transfer decisions").

The Fourteenth Amendment's Equal Protection Clause "directs that 'all persons similarly circumstanced shall be treated alike.'"  Plyler v. Doe, 457 U.S. 202, 216, 102 S. Ct. 2382, 2394 (1982) (internal citations omitted).  On the other hand, "'[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same.'"  Id.  In raising in his opposition an argument that he is being discriminated against on the basis of race, plaintiff apparently seeks to invoke the protections afforded to a suspect class, requiring higher scrutiny of government action, with respect to his allegations concerning the

---

[6] Convention of the Transfer of Sentenced Persons, 22 I.L.M. 530 (1983).

[7] The Transfer of Offenders to and from Foreign Countries Act, 18 U.S.C. § 4100, et seq. (1988).

4

refusal of defendant Perez and the Board to transfer him to Canada. Johnson v. California, 543 U.S. 499, 505, 125 S. Ct. 1141 (2005), quoting Adarand Constructors, Inc. v. Peña, 515 U.S. 200, 207, 115 S. Ct. 2097 (1995) ("[w]e have held '*all* racial classifications [imposed by government]...must be analyzed by a reviewing court under strict scrutiny.") [Emphasis in Johnson, supra.]   However, in the first place, while both plaintiff and Schiold were illegal immigrants convicted in California of second degree murder, taking plaintiff's allegations as true as the court must on this motion to dismiss, plaintiff nevertheless does not meet the threshold requirement of showing himself to be similarly situated to Schiold.  Inmate Schiold was a citizen of another country, apparently in a different posture with respect to his parole consideration, and whose transfer was effected with respect to a different treaty than the one arguably applicable to plaintiff's incarceration.  Moreover, even assuming plaintiff does meet the threshold of being similarly situated, the U.S. Supreme Court has long refused to recognize illegal aliens as a suspect class.  Plyler, supra, at 219, n. 19, 102 S. Ct. at 2396, n. 19 ("Unlike most of the classifications that we have recognized as suspect, entry into this class [illegal aliens], by virtue of entry into this country, is the product of voluntary action.  Indeed, entry into the class is itself a crime.")

While a complaint subjected to a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations, a plaintiff is obligated to provide a basis for his entitlement to relief beyond "labels and conclusions....[f]actual allegations must be enough to raise a right to relief above the speculative level...." Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1964-65 (May 21, 2007).  Plaintiff must make more than a desperate stab at alleging racial discrimination in his opposition to a motion to dismiss (but not even in his complaint) in order to qualify to continue in litigation.  Simply picking a person of a different race, in a different situation, in a different legal regime, and as far as the opposition demonstrates, subject to a transfer decision made by different decisionmakers, who qualified for something similar to what plaintiff desires, falls far short of moving an assumed racial discrimination claim past the barest of outright speculations.  The court finds that defendants' motion to dismiss should be granted as to defendant Perez, plaintiff having failed to allege a cognizable claim of a violation of his constitutional rights by the alleged actions of this defendant in not permitting plaintiff's transfer to Canada.

"Under Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint can possibly be saved.  Courts are not required to grant leave to amend if a complaint lacks merit entirely." Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).  See also, Smith v. Pacific Properties and Development Corp., 358 F.3d 1097, 1106 (9th Cir. 2004), citing Doe v. United States, 58 F.3d 494, 497(9th Cir.1995) ("a district court should grant leave to

1    amend even if no request to amend the pleading was made, unless
      it determines that the pleading could not be cured by the allegation
2    of other facts.")

3    Although the court has much doubt that plaintiff can state a claim
      of racial discrimination against defendant Perez, plaintiff will be
4    given one opportunity to state *facts* from which a reasonable
      inference of discrimination could be made.

5

6    Order, filed on 7/31/07, pp. 8-13.

7              The court has quoted from its earlier order (with footnotes) so extensively to

8    emphasize that the sole basis upon which plaintiff was granted leave to amend was to attempt to

9    frame a viable claim of racial discrimination against defendant Perez.  However, in the second

10   amended complaint, plaintiff does not even make any reference to racial discrimination, opting

11   instead to make wide-ranging allegations regarding the putative violations of federal immigration

12   statutes.  Plaintiff, in failing to set forth any facts whatsoever as a predicate for a claim of racial

13   discrimination, appears to have abandoned the only basis upon which he was granted leave to

14   amend.  Therefore, the court will now recommend dismissal of this action for plaintiff's repeated

15   failure to state a claim.  In the alternative, the undersigned recommends dismissal for plaintiff's

16   failure to comply with a court order.  See Fed. R. Civ. P. 41(b); L.R. 11-110.

17   \\\\\

18   \\\\\

19   \\\\\

20   \\\\\

21   \\\\\

22   \\\\\

23   \\\\\

24   \\\\\

25   \\\\\

26   \\\\\

1       Accordingly, IT IS RECOMMENDED that this case be dismissed 1) for

2  plaintiff's repeated failure to state a claim; 2) in the alternative, pursuant to Fed. R. Civ. P. 41(b),

3  L.R. 11-110, for plaintiff's failure to comply with a court order.

4       These findings and recommendations are submitted to the United States District

5  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

6  days after being served with these findings and recommendations, any party may file written

7  objections with the court and serve a copy on all parties.  Such a document should be captioned

8  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

9  shall be served and filed within ten days after service of the objections.  The parties are advised

10  that failure to file objections within the specified time may waive the right to appeal the District

11  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

12  DATED: 10/01/08

13                                                    /s/ Gregory G. Hollows
                                                    _____
14                                                    GREGORY G. HOLLOWS
                                                    UNITED STATES MAGISTRATE JUDGE
    GGH:009
15  mitc1491.fr

16

17

18

19

20

21

22

23

24

25

26